UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME ANDERSON,<br><br>                Plaintiff,<br><br>    v.<br><br>KADMON HOLDINGS, INC., HARLAN W. WAKSAL, TASOS G. KONIDARIS, EUGENE BAUER, CYNTHIA SCHWALM, DAVID E. COHEN, NANCY MILLER-RICH, and ARTHUR KIRSCH,<br><br>                Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Jerome Anderson ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Kadmon Holdings, Inc. ("Kadmon" or the "Company") and Kadmon's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Sanofi S.A. through its wholly-owned subsidiary Latour Merger Sub, Inc. (collectively "Sanofi").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on October 4, 2021. The Proxy recommends that Kadmon stockholders vote in favor of a proposed transaction (the "Proposed

1

Transaction") whereby Kadmon is acquired by Sanofi. The Proposed Transaction was first disclosed on September 8, 2021, when Kadmon and Sanofi announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Sanofi will acquire all of the outstanding shares of common stock of Kadmon for $9.50 per share (the "Merger Consideration"). The deal is valued at approximately $1.9 billion and is expected to close in the fourth quarter of 2021.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Kadmon management, as well as the financial analyses conducted by Cantor Fitzgerald & Co. ("Cantor Fitzgerald") and Moelis & Company LLC ("Moelis"), Kadmon's financial advisors.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Kadmon's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Kadmon.

6. Defendant Kadmon is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 450 East 29th Street, New York, New York 10016. Kadmon common stock trades on NASDAQ under the ticker symbol

"KDMN."

7. Defendant Harlan W. Waksal has been a director of the Company since 2013 and has served as President and CEO of the Company since 2014.

8. Defendant Tasos G. Konidaris has been a director of the Company since 2017. Defendant Konidaris serves as Chairman of the Board.

9. Defendant Eugene Bauer has been a director of the Company since 2010.

10. Defendant Cynthia Schwalm has been a director of the Company since 2019.

11. Defendant David E. Cohen has been a director of the Company since 2019.

12. Defendant Nancy Miller-Rich has been a director of the Company since 2020.

13. Defendant Arthur Kirsch has been a director of the Company since 2019.

14. Defendants Waksal, Konidaris, Bauer, Schwalm, Cohen, Miller-Rich and Kirsch are collectively referred to herein as the "Board."

15. Nonparty Sanofi S.A. is a French *société anonyme* with its principal executive offices located at 54, rue La Boétie, 75008 Paris, France. Sanofi's common stock trades on NASDAQ under the ticker symbol "SNY."

16. Nonparty Latour Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Sanofi S.A.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Kadmon's principal executive offices are located in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

A. **Background of the Company and the Proposed Transaction**

20. Kadmon is a biopharmaceutical company researching and developing therapies for immune and fibrotic diseases, as well as immune-oncology therapies. One of the Company's candidates, Belumosudil, was approved by the FDA in July 2021 to treat chronic graft-versus-host disease following hematopoietic cell transplants. Another candidate, KD033, is in a Phase 1 trial to treat metastatic or locally advanced solid tumors.

21. On September 7, 2021, the Company entered into the Merger Agreement with Sanofi.

22. According to the press release issued on September 8, 2021 announcing the Proposed Transaction:

> **Sanofi to acquire Kadmon to further strengthen growth of transplant business**
>
> *– Adds Rezurock(TM) (belumosudil) an FDA-approved, first-in-class treatment for adult and pediatric patients 12 years and older with chronic graft-versus-host disease (cGVHD) after failure of at least two prior lines of systemic therapy –*
>
> **PARIS and NEW YORK – September 8, 2021 –** Sanofi has entered into a definitive merger agreement with Kadmon Holdings, Inc. (NASDAQ: KDMN) a biopharmaceutical company that discovers, develops, and markets transformative therapies for disease areas of significant unmet medical needs. The acquisition

supports Sanofi's strategy to continue to grow its General Medicines core assets and will immediately add Rezurock(TM) (belumosudil) to its transplant portfolio. Rezurock is a recently FDA-approved, first-in-class treatment for chronic graft-versus-host disease (cGVHD) for adult and pediatric patients 12 years and older who have failed at least two prior lines of systemic therapy.

Shareholders of Kadmon common stock will receive $9.50 per share in cash, which represents a total equity value of approximately $1.9 billion (on a fully diluted basis). The Sanofi and Kadmon Boards of Directors unanimously approved the transaction.

> *"We are transforming and simplifying our General Medicines business and have shifted our focus on differentiated core assets in key markets,"* said Olivier Charmeil, Executive Vice President General Medicines. *"We are thrilled to add Kadmon's Rezurock to our well-established transplant portfolio. Our existing scale, expertise, and relationships in transplant create an ideal platform to achieve the full potential of Rezurock, which will address the significant unmet medical needs of patients with chronic graft-versus-host disease around the world."*
>
> *"We are excited that Sanofi has acknowledged the value of Rezurock and the deep potential of our pipeline,"* said Harlan Waksal, M.D., President and Chief Executive Officer, Kadmon. *"By leveraging Sanofi's global resources and long-standing expertise in developing and commercializing innovative medicines, Rezurock is now well positioned for global accessibility, faster. I want to thank the entire Kadmon team, including management and the Board of Directors, and the Sanofi organization, for their ongoing commitment to patients and their caregivers."*

Sanofi's transplant business mainly consists of Thymoglobulin$^{(R)}$ (anti-thymocyte globulin), a polyclonal, anti-human thymocyte antibody preparation that acts as a broad immunosuppressive and immunomodulating agent and Mozobil$^{(R)}$ (plerixafor), a hematopoietic stem cell mobilizer. Both products are among General Medicines core assets and are currently registered and marketed in more than 65 countries.

In July 2021, the FDA approved Rezurock for the treatment of adult and pediatric patients 12 years and older with cGVHD after the failure of at least two prior lines of systemic therapy. Rezurock was launched in August in the United States. It is the first and only approved small molecule therapy that inhibits the Rho-associated coiled-coil kinase 2 (ROCK2), a signaling pathway that modulates inflammatory response and fibrotic processes. Sanofi will work closely with regulatory authorities across different geographies to ensure that patients suffering from cGVHD can benefit from belumosudil treatment as early as possible. Kadmon is also developing Rezurock for the treatment of diffuse cutaneous systemic sclerosis, with an open-label Phase 2 clinical trial currently ongoing.

Kadmon's pipeline includes drug candidates for immune and fibrotic diseases as well as immuno-oncology therapies.

The transaction is expected to be modestly dilutive to Sanofi's EPS in 2022.

**Transaction Terms**

Under the terms of the merger agreement, holders of Kadmon's common stock will receive $9.50 per share in an all-cash transaction, reflecting a total equity value of Kadmon of approximately $1.9 billion. The offer price represents a premium of 79% over the closing price on September 7, 2021 and a premium of approximately 113% over the 60 trading days volume weighted average price.

The consummation of the transaction is subject to customary closing conditions, including the approval of holders of a majority of the outstanding shares of Kadmon voting stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the merger, a wholly owned subsidiary of Sanofi will merge with Kadmon and the outstanding Kadmon shares will receive $9.50 per share in cash. Sanofi plans to fund the transaction with available cash resources. Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the fourth quarter of 2021.

B. **The Materially Incomplete and Misleading Proxy**

23.     On October 4, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

> ***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

24.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Cantor Fitzgerald's fairness opinion, Cantor Fitzgerald reviewed "certain operating and financial

6

information relating to the Company's business and prospects, including projections for the Company . . . all as prepared and provided to Cantor Fitzgerald by the Company's management." Moelis reviewed "certain internal information relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company furnished to Moelis by the Company, including financial forecasts provided to or discussed with Moelis by the management of the Company" in connection with the rendering of its fairness opinion. Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Kadmon's management provided to the Board and Cantor Fitzgerald and Moelis.

25. Notably, Defendants failed to disclose the line items underlying EBIT, as well as federal and state net operating losses. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Cantor Fitzgerald's Financial Analyses*

26. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the inputs and assumptions underlying the discount rates of 9.5% to 11.5%. The Proxy further fails to disclose the terminal value of the Company. The Proxy also fails to disclose the basis for assuming that the Company's after-tax unlevered free cash flows would decline in perpetuity after December 31, 2034 at a rate of 60% to 10% year-over-year. Additionally, the Proxy fails to disclose the Company's estimated cash, debt, convertible preferred stock and other liabilities, as well as the number of fully diluted shares of Company common stock.

### *Materially Incomplete and Misleading Disclosures Concerning Moelis' Financial Analyses*

27. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the Company's federal and state net operating losses and federal research and development tax credits.

7

The Proxy also fails to disclose the Company's estimated cash balance for December 31, 2021. Additionally, the Proxy fails to disclose the Company's terminal year after-tax unlevered free cash flow. The Proxy further fails to disclose the terminal values for the Company. Finally, the Proxy fails to disclose the inputs and assumptions underlying the discount rates of 8.25% to 10.75% and growth rates of -75% to -25%.

28. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

29. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

30. Further, the Proxy indicates that on September 7, 2021, Cantor Fitzgerald and Moelis reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board oral opinions, which were confirmed by delivery of written opinions of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Kadmon stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Cantor Fitzgerald's and Moelis' financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

31. Plaintiff is immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to

prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Defendants have filed the Proxy with the SEC with the intention of soliciting Kadmon stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

34. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Kadmon, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Kadmon shares and the financial analyses performed by Cantor Fitzgerald and Moelis in support of their fairness opinion.

37. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Cantor Fitzgerald and Moelis reviewed and discussed their financial analyses with the Board on September 7, 2021, and further states that the Board considered Cantor Fitzgerald's and Moelis' financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

38. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Kadmon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kadmon and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

43. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 22, 2021 **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*